IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GERALD D. FULLER | * | |
| Plaintiff | * | |
| v | * | Civil Action No. WMN-11-1917 |
| | | (Consolidated Case WMN-11-2058) |
| D. KENNETH HORNING, *et al.* | * | |
| Defendants | * | |

\*\*\*

# MEMORANDUM

Pending is Defendants' Motion to Dismiss or for Summary Judgment (ECF No. 48), as well as several non-dispositive motions filed by Defendants and Plaintiff. Plaintiff has opposed the dispositive motion (ECF No. 59, 60, and 61), moves for default judgment (ECF No. 32 and 40), moves for summary judgment (ECF No. 44 and 57), and seeks reconsideration of the court's order denying his Motion to Amend the Complaint (ECF No. 31).

## Non-Dispositive Motions

Plaintiff seeks, for a second time, reconsideration of this court's denial of his Motion to Amend the Complaint. ECF No. 31; *see also* ECF No. 24. Plaintiff sought reconsideration of this Court's denial of his attempt to amend the complaint in this case, and here seeks reconsideration of the Court's denial of his Motion for Reconsideration. ECF No. 31. In a Memorandum dated November 17, 2011, denying Plaintiff's first Motion for Reconsideration, this Court stated:

> The Amended Complaint concerns essentially every claim Plaintiff has attempted to litigate since 2007, all of which are either time barred or barred by res judicata. ECF No. 25. Where, as here, the proposed amendment to the complaint appears to be a futility, this Court has the discretion to deny leave to amend. Thus, the amended complaint will not be served and the additional defendants named will not be added.

ECF No. 27 at p. 2.  Plaintiff summarizes the claims he seeks to include in this case, statimg such allegations were contained in the original Complaint.  ECF No. 31.  In the original Complaint Plaintiff states that he "has not filed a previous law suit dealing with the same facts as in this case or against the same defendants."  ECF No. 1 at p. 1.  He then asserts that Warden Horning is violating Plaintiff's First Amendment right of to free speech, enforcing an illegal, racially discriminatory property policy ("slave property policy"), denying him access to the courts, and retaliating against him for past litigation.  To the extent that the claims asserted were premised on Plaintiff's assertion that he had not before raised these issues, his attempt to include other claims which were the subject of past litigation was an attempt to amend the Complaint.  Plaintiff's Motion for Reconsideration of the previous denial of both his Motion for Reconsideration and his Motion to Amend the Complaint shall be denied for the same reasons previously stated by this Court.  *See* ECF No. 27 and 28.

Plaintiff's Motions for Default Judgment were filed on December 1 and 27, 2011.  ECF No. 32 and 40.  This Court granted Defendants' Motions for Extension of Time on November 17, 2011, to and including December 16, 2011 (ECF No. 29); and on December 20, 2011,[1] to and including January 16, 2012 (ECF No. 38).[2]  Plaintiff's Motions for Default Judgment are frivolous and shall be denied.  Additionally, Plaintiff's Motion to Correct Manifest Error (ECF No. 57) in which he asserts that Defendants conceded the factual allegations raised in his Motions for Default Judgment and seeks to strike Defendants' Motion to Dismiss or for Summary Judgment as untimely, is frivolous and will be denied.  Plaintiff's objections to

---

[1] Defendants filed the second Motion for Extension of Time on December 16, 2011.  ECF No. 37.

[2] Defendants filed a third Motion for Extension of Time to and including February 16, 2012 (ECF No. 45).  Their Motion to Dismiss or for Summary Judgment was filed on February 16, 2012; the motion for extension of time will be granted, *nunc pro tunc*.  Additionally, counsel's Motion to Withdraw shall be granted. ECF No. 34.

Defendants' Motions for Extension of Time are noted, but were overruled when the motions were granted.

Plaintiff's pending Motion to Amend the Complaint seeks to add various claims against supervisory correctional personnel regarding their participation in the development and enforcement of the Division of Corrections' "slave property policy." ECF No. 56. To the extent that the Motion to Amend simply clarifies Plaintiff's claims raised in the Complaint, it is granted and will be considered in the context of Defendants' Motion to Dismiss or for Summary Judgment. Plaintiff's Motion for Injunctive Relief will be considered in the context of this Court's dispositive review of this case which follows.

**Background**

Plaintiff claims that Warden Horning denied his access to courts and retaliated against him for exercise of his First Amendment right to freedom of speech[3] and for Plaintiff's jailhouse lawyering when he was required to send out or destroy all legal papers, transcripts, books, research, and documents that exceeded 1.5 cubic feet. Plaintiff asserts that Horning "conspired and fabricated" a property policy that allows for forfeiture of certain property without due process of law for the sole purpose of imposing "economic slavery" in violation of the Thirteenth Amendment. Plaintiff states the property policy disproportionately impacts Black inmates and that it was used to strip him of his "court-ordered word processor and disks." Plaintiff further alleges that Defendants retaliated and conspired to strip him of his court-protected rights by confiscating three books he had written in response to a complaint he lodged regarding the property policy. ECF No. 1 at pp. 2 – 3.

---

[3] Plaintiff claims Horning did not like the information he included in a column he wrote called "Dear Friend" which discussed things that occur in various prisons where Plaintiff has been incarcerated. ECF No. 1 at p. 2.

Plaintiff claims Defendants forced him to go out into an electrical storm on a prison compound where two people were killed when they were struck by lightning. He states ordering him to leave the safety of the building during an electrical storm violated prison policy. He further states that Defendants perjured themselves after the fact to cover up the fact they forced him out into the storm. He claims the Commissioner of Correction as well as the Inmate Grievance Office (IGO) also covered up the incident, denying him relief for his claim. ECF No. 1 at p. 3.

Plaintiff was found guilty of two separate adjustment charges which he states were based on falsified disciplinary reports.[4] Plaintiff claims that at the time he was charged he was incompetent due to chemotherapy he was undergoing which caused him to hallucinate. Plaintiff states the adjustment charges were lodged against him so that Defendants could create a basis to take his word processor and disks. ECF No. 1 at pp. 3 – 4.

As a result of being deprived of his word processor, Plaintiff states he lost his "*Adams* case." He claims that he was unable to provide his attorney with the facts to support his claim that he was prejudiced in his criminal trial when the trial court instructed the jury that they could decide the law and the facts. Plaintiff explains that his step-daughters, who were ages 9 and 11, were allowed to tell the jury they witnessed Plaintiff break their mother's nose when she was pregnant.[5] Plaintiff maintains that the testimony was false and trial counsel did not object. He asserts that access to his word processor would have enabled him to provide unspecified evidence to his appellate attorney which would have resulted in a successful challenge to his conviction. ECF No. 1 at p. 4.

---

[4] In other documents filed in this case Plaintiff explains that the disciplinary reports charged he had a bag of urine with him when he was asked to give a urine test and that he tested positive for use of drugs.

[5] Plaintiff was convicted of the first degree murder of his wife in 1979. ECF No. 48 at Ex. 5.

Plaintiff also claims that as a result of his word processor being confiscated he could not timely present evidence in a "pending case." He states the evidence to which he lost access was "a statute holding that for the purpose of parole the life sentence was equivalent to 45 years." Plaintiff asserts that this statute he found, when considered in conjunction with the 1971 law which created a second parole system, means that a life sentence is not an indeterminate sentence for purposes of parole and that persons serving life sentences are entitled to application of credits toward mandatory release. ECF No. 1 at pp. 4 – 5. He further claims that he lost "a number of other cases" solely because of Horning and Webb's confiscation of his word processor and disks pursuant to an illegal policy. Plaintiff states that "Webb in fact perjured himself in a sworn federal declaration in order to prevent Plaintiff from obtaining injunctive relief barring the taking of word processor and disk." *Id*. at p. 5. Plaintiff does not provide the substance of the alleged perjury.

Plaintiff seeks injunctive relief against Warden Green because he claims she is embarking on the same course of conduct taken by Horning. He states she required him to either send out or have seized legal papers concerning claims which were already administratively exhausted; placed him in an administrative cell without power; and "intends to apply the illegal property policy to his word processor and disk." ECF No. 1 at p. 5. Plaintiff alleges that confiscation of the word processor would prevent him from proving the elements of his claims in the instant case. *Id*.

Plaintiff alleges he is regularly retaliated against by Defendants and states that less than six months after writing to Secretary Saar and two weeks after his complaint was made known to the warden, he was transferred to Roxbury Correctional Institution (RCI). He further alleges that less than seven days after writing a "Dear Friend" column, he was transferred back to Maryland

5

Correctional Training Center (MCTC). When he was transferred Plaintiff claims no list was made indicating the number of disks he had when he left RCI or entering MCTC. He states that prison staff later claimed Plaintiff had no disks and denied him the opportunity to contact witnesses who could prove otherwise. ECF No. 1 at p. 6.

Plaintiff explains that the property policy allows confiscation of property as an "additional sanction not mandated by the Commissioner" whenever an inmate is sentenced to a disciplinary segregation sentence of 150 days or more. Although the subject prisoner is forced to forfeit his property, he is permitted to buy new property from designated vendors. Plaintiff concludes that this system constitutes economic slavery. ECF No. 1 at p. 7. As relief Plaintiff seeks monetary damages and asks that his adjustment conviction from August of 2008 be reversed. *Id*.

The amended Complaint (ECF No. 5) seeks injunctive relief against Warden Green and "her agents" at Eastern Correctional Institution (ECI). Plaintiff states that there is a conspiracy to deprive him of his property rights in violation of DCD 220-0004 which requires a hearing before an inmate is deprived of his property. Plaintiff claims that Green arranged for another inmate to provoke him in order to quell his First Amendment activities by seizing his word processor. ECF No. 5 at p. 3.

Plaintiff was told on Friday, July 8, 2011, he would be transferred to another prison the following Monday. In preparation for the transfer, Officers Lowe and Whitelock packed up all of Plaintiff's property and took all of his legal papers away. Plaintiff states the real reason he was transferred was Green and others wanted to delay his hearing for 30 days and insure a certain hearing officer would be assigned to his case. Plaintiff's Complaint is dated July 11,

6

2011, and alleges that although he was never transferred; his property was not returned to him. ECF No. 5 at pp. 3 – 5.

Defendants assert that Plaintiff's claims date back to August 10, 2008, when officers discovered he possessed a bag of urine belonging to another person during an attempted urinalysis test. Plaintiff was issued an infraction. ECF No. 48 at Ex. 2, p. 2. Plaintiff was then given another urinalysis test and issued another infraction after the results of the test came back positive. At a hearing for both infractions on August 21, 2008, Plaintiff was found guilty of all charges and sentenced to 380 days of disciplinary segregation. Due to the length of his segregation sentence, Plaintiff lost regular access to his word processor. Inmates on disciplinary segregation are not allowed to have word processors and are required to mail unauthorized property to an outside address. Plaintiff was given access to his disks on three occasions for the purpose of printing any legal documents stored on the disks that he needed.

Plaintiff sued Warden Horning in this Court on September 3, 2008, alleging the loss of regular access to his word processor and disks amounted to a denial of access to courts. This Court held that Plaintiff failed to establish actual injury resulting from the confiscation of the word processor and noted that the Maryland Judiciary Case Search docket showed an extensive filing history including cases being litigated during the time frame Plaintiff did not have regular access to his word processor. This Court granted summary judgment in favor of Warden Horning.

With respect to Plaintiff's claims that he was prejudiced in several pending cases because of the confiscation of legal materials in 2008, Defendants state that the Maryland Judiciary website shows that two of Plaintiff's cases, nos. 57902206 and 57902208, were closed on April 20, 2007, well before the August 2008 confiscation that allegedly interfered with Plaintiff's

ability to proceed with them. ECF No. 48 at Ex. 4, pp. 1 – 2. Plaintiff's post-conviction case (No. 17832115) was counseled and the case was closed on August 13, 2010. *Id*. at p. 4. Plaintiff's case numbered 19C10014010 was filed on May 5, 2010, and remained active until it was closed on July 28, 2011. *Id*. at p.5. Plaintiff filed memoranda supported by exhibits in that case on April 19, 2011, and received a hearing on July 28, 2011. *Id.* at p. 9. In Case No. 19C10014190, filed July 27, 2010, Plaintiff filed a Memorandum in Support of Judicial review on October 19, 2010, and received two hearings before the court ultimately ruled against him on July 28, 2011. *Id*. at pp. 14-16. Plaintiff's appellate case was filed on October 12, 2010 and decided on September 22, 2011. *Id*. at Ex. 5, *Fuller v. State*, No. 1956, Sept. Term, 2010 (Md. App). The Court observed that the appeal was "the latest event in the continuation of numerous attempts by Gerald Fuller . . . to gain post-conviction relief from concurrent life sentences for first-degree murder and first-degree rape and a twenty-year sentence for robbery with a deadly weapon." *Id*. at p. 2. The appeal was dismissed as improper because it was "an appeal of a habeas corpus decision dressed up as an appeal of the denial of a motion to alter or amend judgment pursuant to Md. Rule 2-534." *Id*. at p. 11. The Court also observed, however, that the lower court did not abuse its discretion in denying the motion to alter or amend inasmuch as the motion simply asked the court to revisit the merits of the issues raised in the habeas corpus petition. *Id*. at p.12.

With respect to Plaintiff's claim he was forced to go outside in an electrical storm, Defendants state that Plaintiff's claim was investigated and dismissed on June 20, 2008, when it was learned that Plaintiff was ordered to leave the dispensary because he became verbally abusive when his request for additional medical treatment was not granted. ECF No. 1 at Att. 1, p. 5. In addition, there was no evidence to substantiate Plaintiff's claim that lightning was

occurring when he was ordered out of the building. *Id*. at p. 4, *but see also* p. 1 (letter from Accuweather verifying a "brief hard downpour along with thunder and lightning").

## Injunctive Relief

In his Motion for Injunctive Relief Plaintiff references a box of documents sent to this Court during the litigation of Civil Action WMN-08-2300 and states he sent the property believing the Court would protect his First Amendment rights. ECF No. 54 at p. 2. Plaintiff cites the Court's dispositive Order in that case which provided in pertinent part that Plaintiff's property would be destroyed in 15 days.[6] *Id*. He further alleges that his word processor and disks were improperly taken from him, depriving him of access to the courts in the context of post-conviction claims and his pursuit of veteran's disability benefits. Additionally, he claims the confiscation of his property was done without affording him due process and was the result of false disciplinary charges against him. All of these events occurred in 2008. *Id*. at pp. 3 – 7. Plaintiff claims that actions taken against him are a retaliatory response to his challenge of the "slave property policy." *Id*. at p. 7. Plaintiff further claims that Defendants conspired to murder him by forcing him to go outside in an electrical storm. *Id*. at p. 9.

Plaintiff requests that this Court order Defendants to: return his unlawfully confiscated property; end the "prisoner property slave policy;" compensate Plaintiff for property confiscated that has been destroyed or damaged in the amount of 1.5 million dollars; reverse and expunge the adjustment findings used to place Plaintiff on disciplinary segregation for the purpose of taking his property; and order payment to Plaintiff of all replacement costs. *Id*. at pp. 11 – 12. Plaintiff further states that if he is granted injunctive relief he will then be able to prove his access to

---

[6] Plaintiff fails to recall he was provided the opportunity to give the Court an address where his property could be sent as well as the prior warning given to him by the Court. *See Fuller v. Horning*, Civil Action WMN-08-2300 (D. Md.) at ECF Nos. 20 (granting 30 days from December 4, 2008, to provide an address), 37 (noting that the box of papers sent were personal) and 38 (notice that property will be destroyed 15 days from February 17, 2009).

courts has been hindered because documents establishing a genuine dispute of material fact regarding the validity of the adjustment conviction; pertaining to an appeal of a denial of a complaint by the Inmate Grievance Office (IGO); and proving Plaintiff's equal protection claim is more than mere speculation. *Id*. at pp. 16 and 17.

In his supplemental Motion for Injunctive Relief, Plaintiff adds that although he has been able to respond to allegations made by Defendants in this case, he does not have access to materials that would prove Defendants' motion is a fraud on this Court. ECF No. 55 at p. 2. He claims return of his property would give him access to such material. He explains in part that if he is given access to his word processor he can prove he was given one urine test on August 10, 2008, and was not tested on the following day, but the adjustment hearing officer ignored the date discrepancy. *Id*. at p. 3. He further states he could prove, upon return of his property, that his convictions would have been vacated but for the confiscation of his legal property. *Id*.

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, _U.S. _, 130 S.Ct. 2371, 176 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam). Plaintiff has failed to satisfy this burden and is not entitled to injunctive relief.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

At the outset, this Court notes that Plaintiff's assertion that without access to the legal materials confiscated he is unable to prove the merits of his claim in this case is unpersuasive. ECF No. 41 at p. 3.  Plaintiff does not describe what evidence is missing, nor does he explain how it would entitle him to judgment in his favor.  With respect to his adjustment conviction,

Plaintiff does reference the existence of proof that the hearing officer ignored a discrepancy in dates noted on his notices of infraction. That discrepancy, however, does not entitle him to relief in this Court. Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F.Supp. 1371, 1376 (E.D.Va.1980). The mere fact that a DOC rule governing adjustment hearings was violated does not necessarily equal a due process violation. *See Riccio v. County of Fairfax*, 907 F.2d 1459, 1456 (4th Cir. 1990) ("a state does not necessarily violate the constitution every time it violates one of its rules."); *Ewell v. Murray*, 813 F. Supp. 1180, 1183 (W.D. Va. 1995) ("Even if state law creates a liberty interest, violations of due process are to be measured against a federal standard of what process is due.").

With regard to evidence Plaintiff may regard as proving his claim that he is the target of a conspiracy to deprive him of his "property rights," it is irrelevant, inasmuch as prisoners do not have the sort of property rights Plaintiff asserts. There is no right to possess or own property in prison; and unless the deprivation of the property in question impacts a constitutional right, removal of property from a prisoner simply does not state a constitutional claim. *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U. S. 327 (1986) (sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy in the case of lost or stolen property).

The analysis is not changed by Plaintiff's claim that the deprivation of property occurred in the context of his assignment to disciplinary segregation. It is not the role of this Court to determine how prisons may be more beneficently run. Additionally, Plaintiff was given opportunities to access his legal materials during his assignment to segregation. His complaint that he was not allowed unfettered access to materials because they were not in his immediate possession is not a constitutional claim.

The question remains whether the removal of Plaintiff's word processor, disks, and other unspecified "legal materials" improperly impacted his right of access to the courts. Prisoners have a constitutionally protected right of access to the courts. *Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) *quoting Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

Plaintiff alleges his access to courts was denied because he was unable to pursue a claim related to his criminal conviction; two claims related to administrative agency appeals; and a Veterans' disability claim. Among the numerous papers filed by Plaintiff in the instant case are several documents pertaining to his post-conviction challenges. One, a Memorandum Opinion issued by the Circuit Court for Baltimore City on August 12, 2009, concerns Plaintiff's Motion to Reopen Post-Conviction Proceedings with respect to his conviction for first-degree rape and

robbery. ECF No. 36 at Ex. "Group 8." Plaintiff pled guilty to first-degree rape and robbery on October 24, 1979 and was sentenced to life with twenty years concurrent, to be served concurrently with his existing life sentence for the first-degree murder of his wife. The post-conviction court summarized the procedural history of the case as follows:

> On December 27, 1983, Petitioner filed a Petition for Post-Conviction Relief. The Honorable Arrie Davis, Circuit Court for Baltimore City (presently Court of Special Appeals) denied the Petition on May 16, 1984. Thereafter, on July 18, 1984, the Petitioner filed an Application for Leave to Appeal. On November 19, 1984, the Court of Special Appeals denied Petitioner's Application for Leave to Appeal.
>
> On February 24, 2004, Petitioner filed a "Motion to Reopen Post-Conviction Proceedings Motion for Restituito Integrum/Writ of Audita Querela." On March 17, 2004, this Court denied Petitioner's Motion. Thereafter, the Court of Special Appeals denied Petitioner's Application for Leave to Appeal on May 28, 2004.
>
> On April 6, 2009, Petitioner filed the extant Motion to Reopen Post-Conviction Proceedings. This the Petitioner's second such motion.

*Id*. at p. 2. Thereafter, the court rejected each of Plaintiff's asserted grounds for relief finding that they were either meritless or he had failed to allege how he was injured by the asserted error. His assertion in the instant case that he could not present the claim that his guilty plea was involuntary because the sentencing judge did not recommend continuing evaluation at Patuxent is belied by the Circuit Court's decision rejecting his claim that the plea was involuntary. *Id*. at pp. 9 – 13. Additionally, his claim that he was not informed of the nature of the offense to which he was pleading guilty is belied by the sentencing transcript he includes with his Memorandum in Support of Summary Judgment. ECF No. 59 at Ex. A (plea transcript). Not only was Plaintiff asked on numerous occasions if he knew what rights he was waiving by pleading guilty, the State's Attorney provided a lengthy description of the evidence that would have been produced at trial in support of his guilt. *Id*. at pp. 12 – 15. That description included identification

evidence, ballistics evidence, and the testimony of two witnesses, the victim of the rape and another man who was present during the rape and the robbery. While the State's Attorney did not describe physical evidence indicating that the victim engaged in sexual activity, such evidence was not required given Plaintiff's decision to plead guilty to the offense. Thus, it is clear from the evidence presented that Plaintiff has not been prevented from presenting a meritorious claim entitling him to relief with respect to his asserted challenges to his first-degree rape and robbery conviction. His challenges have been numerous and exhaustive. The constitutional guarantee of access to the courts does not include litigation of meritless, duplicative claims.

Plaintiff's challenges to his first-degree murder conviction have been no less exhaustive and no less futile. On July 12, 1979, Plaintiff was found guilty after a jury trial of the first-degree murder of his wife and was sentenced to life on August 20, 1979. In a September 22, 2011, unreported opinion rejecting his attempt to appeal a denial of a Petition for Writ of Habeas Corpus, the Court of Special Appeals recounted Plaintiff's challenges to his conviction as follows:

> Appellant has previously petitioner the Circuit Court for Baltimore City for post-conviction relief three times. On March 12, 1984, appellant filed his first petition for post-conviction relief. On June 19, 1984, the Circuit Court for Baltimore City denied relief. Appellant filed two applications for leave to appeal regarding the denial of the petition, and this court denied leave to appeal in both instances. On November 10, 1989, appellant petition for post-conviction relief a second time and the circuit court denied relief. Appellant petitioned for post-conviction relief a third time and on September 21, 1995, the circuit court denied relief for the third time. This Court denied leave to appeal in each instance.
>
> On April 29, 1998, June 8, 1998, and July 20, 1998, appellant filed motions to correct an illegal sentence. On February 23, 2000, the circuit court denied appellant's motions. On June 20, 2002, appellant filed another motion to correct an illegal sentence and the circuit court denied the motion. This Court affirmed the Circuit Court's denial of the motion.

> On May 14, 1986, appellant filed a petition for habeas corpus relief with the United States District Court for the District of Maryland. On October 23, 1986, the District Court denied the petition. On April 1, 1987, the Fourth Circuit Court of Appeals affirmed the District Court's decision.
>
> In May 2001, appellant filed a petition for habeas corpus relief in the Circuit Court for Washington County. That petition was denied. On April 18, 2002, in an unreported decision, this Court affirmed the denial of habeas corpus relief. *Fuller v. Stouffer*, No. 1178 (Md. Ct. Spec. App. April 18, 2002) *cert. denied* 370 Md. 269 (2002).
>
> On July 22, 2009, appellant filed a petition for writ of habeas corpus in the Circuit Court for Somerset County. Appellant presented four arguments: (1) that he was not appropriately credited for pre-trial time served on the rape and robbery convictions; (2) that his life sentence had not been appropriately diminished in accordance with calculations set forth in *Coley v. State*, 76 Md. App. 731 (1988); (3) that the sentencing court violated his right to due process by imposing a life sentence without parole at a time when that was statutorily non-existent; and (4) that he did not receive the condition of his plea agreement recommending an evaluation at Patuxent Institution.

ECF No. 48 at Ex. 5, pp. 3- 5. Ultimately Plaintiff's appeal was rejected because an appeal from a denial of habeas corpus relief is not appealable, but the Court of Special Appeals also rejected the merits of his claims and found no error in the Circuit Court's denial of relief. Plaintiff's latest claim that there was an "English common law statute" defining a life sentence as 45 years is simply the latest of a long-line of meritless claims he has filed in an attempt to establish his entitlement to release from prison. Even if such a statute existed Plaintiff has not and cannot explain why it would apply to his sentence or entitle him to release from prison. Again, it is clear from the record that Plaintiff's opportunities to challenge the validity of his sentence have been numerous and, important to the instant case, unaffected by the confiscation of his property.

With respect to Plaintiff's administrative agency appeals, he claims his ability to litigate case numbers 19-C-10-014190AP and 19-C-10-014010 were impaired and resulted in the denial of his right to have property returned to him or be compensated in excess of 40 million dollars.

ECF No. 36 at p. 3.   The property he references includes three manuscripts and discs "containing First Amendment property."  *Id*.  In the first case noted by Plaintiff, he was provided two hearings by the Circuit Court for Somerset County and ultimately lost on the merits of his claim, the court affirming the decision of the Inmate Grievance Office on July 28, 2011.[7] Additionally, a review of the electronic docket indicates that Plaintiff was able to file several pleadings in that case and it was not dismissed for procedural error on his part.  The fact that he did not prevail on the merits does not mean his access to courts was abridged.  In the second case noted by Plaintiff he successfully filed a Motion for Administrative Mandamus and successfully opposed the Agency's Motion to Dismiss the appeal.  Again, Plaintiff received two hearings on the matter, but ultimately lost on the merits in a decision dated July 28, 2011.[8]  Review of the procedural history of these two cases does not evidence an inability to litigate brought about by the deprivation of property.  Plaintiff's subjective belief that he was entitled to a multi-million dollar judgment is unpersuasive.

Plaintiff also claims his ability to litigate his Veteran's disability claim has been compromised by the confiscation of his legal materials.  He provides no details regarding his entitlement to disability and only states that some of the property taken included letters written by his wife, who is now deceased.  Plaintiff fails, in the hundreds of pages filed with this Court, to state how letters from his wife, whom he was convicted of murdering, would entitle him to Veteran's disability payments.  It is not medical evidence, nor is it evidence that he was or is now disabled.  Plaintiff has failed to establish actual injury with respect to this claim.

---

[7] *See* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=19C10014190&loc=47&detailLoc=CC

[8] *See* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=19C10014010&loc=47&detailLoc=CC

Plaintiff invites this Court to extrapolate from every action taken against him, a widespread plot by correctional officials to deprive him of his word processor because he is so adept at complaining about unfair prison policies and giving voice to the perceived injustices occurring inside of the prison walls that prison officials wish to silence him.  Left out of the equation is the fact that Plaintiff tested positive for opiates and was found guilty of violating a prison rule; that he became verbally abusive to medical staff and was asked to leave; and that there is no evidence that any Defendant in this case acted with ill-will toward Plaintiff.  In fact Plaintiff would have this Court believe that the sole purpose for the property policy regarding all disciplinary segregation inmates was to specifically deprive him of his word processor.  Plaintiff would have this Court ignore the numerous other legitimate concerns regarding management of disciplinary procedures inside a prison.  The Court recognizes that Plaintiff is a vociferous complainer and has likely done nothing to endear himself to correctional official; however, this Court is not required to make decisions in a vacuum, disregarding other plausible, legitimate explanations for consequences suffered as a result of misbehavior and the limitations imposed by Plaintiff's circumstances.  Viewed objectively, Plaintiff's ability to litigate and his willingness to complain about prison policies are undaunted by the alleged actions against him, causing no discernible chilling of Plaintiff's First Amendment rights.

Plaintiff challenges the property policy in part because it disparately impacts African American inmates and, he claims, he can produce evidence that he was more adversely affected by the policy than a Caucasian inmate.  "[W]hile a prisoner does not forfeit his constitutional right to equal protection by the fact he has been convicted of a crime and imprisoned, prisoner claims under the equal protection clause, including those based upon a racial classification, must still be analyzed in light of the special security and management concerns in the prison system."

18

*Morrison v. Garraghty*, 239 F. 3d 648, 655 (4th Cir. 2001) *citing Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 136 (1977). "[A]ll that is required for a finding of unconstitutional conduct is proof that a discriminatory purpose has been a motivating factor in the decision." *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265 - 66 (1977).  Further, discriminatory purpose "implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).

Assuming Plaintiff can produce evidence of a disparate impact in a single instance of the application of the property policy, his claim fails.  There is no requirement that every prisoner must be treated the same as others without regard to extenuating or aggravating circumstances. Thus, a single instance where someone of a different race was not penalized to the same extent as Plaintiff is of no significance.  Additionally, Plaintiff's claim that the policy impacts more African-Americans because there are more African-Americans in prison and thus it amounts to an improper tax because they must purchase new property from select vendors who do not necessarily offer the lowest price on items of interest is meritless.  The policy itself is neutral and applies to all prisoners, regardless of race.  Additionally, a constitutional rights violation requires proof of intent to deprive those entitled to the right asserted.  At most Plaintiff has highlighted a consequence occurring naturally due to the racial make-up of the prison population.  There is no constitutional requirement that prison officials avoid such consequences in making the difficult decisions required for purposes of managing a prison.

Finally, Plaintiff's claim that he was forced to go out into a thunderstorm is without merit.  Taking his claim to be true, and assuming that ordering him outside during a

thunderstorm was contrary to prison policy, Plaintiff has failed to show any injury resulting from the incident. A constitutional claim must establish not only conditions which produce serious deprivations of identifiable human needs, but also evidence that those conditions resulted in a serious or significant physical or emotional injury. *See Strickler v. Waters*, 989 F. 2d 1375, 1381 (4th Cir. 1993). "The subjective component of an Eighth Amendment claim challenging the conditions of confinement is satisfied by a showing of deliberate indifference by prison officials." *De'Lonta v. Angelone*, 330 F. 3d 630, 634 (4th Cir. 2003). "Deliberate indifference entails something more than mere negligence." *Famer v. Brennan*, 511 U.S. 825, 835 (1994). Requiring Plaintiff to leave the medical unit during a storm and after he became boisterous and disagreeable with medical staff was, at most, negligence.

## Conclusion

Defendants are entitled to summary judgment in their favor on each of the many claims raised by Plaintiff. There are no genuine disputes of material facts warranting a trial in this matter and it is clear that Plaintiff can prove no set of facts that would entitle him to judgment in his favor. Accordingly, in a separate Order which follows, judgment shall be entered in favor of Defendants.

/s/

 6/19/12  
Date

_____  
William M. Nickerson  
United States District Judge